J-S12024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THERESA ADAMS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DAVID A. VAUGHN, M.D., AND SURGICAL SPECIALISTS OF LANCASTER | |
| Appellee | No. 1383 MDA 2016 |

Appeal from the Judgment Entered August 17, 2016
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-13-03124

BEFORE: PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.: **FILED APRIL 06, 2017**

Theresa Adams appeals from the judgment entered on August 17, 2016, in the Court of Common Pleas of Lancaster County after the trial court granted David A. Vaughn, M.D.'s and Surgical Specialists of Lancaster's (collectively Dr. Vaughn or Defendants) motion for compulsory nonsuit at the close of Adams' case-in-chief. In this timely appeal, Adams raises three issues; she claims the trial court erred: (1) in determining plaintiff's expert on liability did not testify to a reasonable degree of medical certainty, (2) in granting defendant's motion for nonsuit where plaintiff had provided a *prima facie* case against Surgical Specialists of Lancaster, and (3) in striking the affidavit of Plaintiff's counsel, April L. Strang-Kutay. After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

We adopt the factual and procedural history of this matter as recited by the trial judge, the Honorable James P. Cullen, in his Opinion and Order of August 5, 2016,[1] denying Adams' motion to remove nonsuit and for a new trial.

> On February 13, 2012, [Adams] presented at the Lancaster General Hospital Emergency Department complaining of abdominal pain. After an ultrasound revealed that [Adams] suffered from gallstones, Dr. Vaughn advised [Adams] that she needed to have her gallbladder removed and that the procedure could be done laparoscopically. This procedure was performed by Dr. Vaughn on February 14, 2012.
>
> Following surgery, [Adams] continued to experience severe pain and remained hospitalized. A CT scan, performed on February 16, 2012, showed that she had a pelvic abscess, which was drained the same day. Tests revealed that the contents of the abscess included bile and feces, indicative of a bowel perforation. A second CT scan on February 18, 2012, located a .2 cm hole in [Adams'] bowel, which was surgically repaired. After this second surgery, [Adams] was treated for peritonitis, continued to experience pain and other symptoms and missed time from work.
>
> At trial, on February 9, 2016, [Adams] produced one expert on liability, I. Michael Leitman, M.D., who testified that he reviewed [Adams'] medical records from Lancaster General Hospital and other hospitals, the deposition testimony of Dr. Vaughn and Dr. Leslie, and the reports by other physicians who reviewed the case. Based on his review of these items, Dr. Leitman testified that he had formed an opinion concerning the alleged breach of the standard of care within a reasonable degree of medical certainty. He then went on to define reasonable degree of medical certainty as meaning "based upon evidence and the records that I have reviewed that, more likely than not the

---

[1] Although judgment was not entered on the docket until August 17, 2016, the trial court's order and opinion were dated August 5, 2016.

opinion I have is supported by the records and materials." The remainder of Dr. Leitman's testimony was devoted to development of his expert opinion.

On February 11, 2016, at the close of [Adams'] case, Defendants moved orally for compulsory nonsuit and subsequently filed a supplemental motion for compulsory nonsuit. Following argument by the parties, the Court granted the motion.[2]

Order and Opinion, 8/5/2016, at 1-3.

Adams' first two issues can be resolved together. Our standard of review regarding the refusal to remove a nonsuit is as follows:

An order denying a motion to remove a compulsory nonsuit will be reversed on appeal only for an abuse of discretion or error of law. A trial court's entry of compulsory nonsuit is proper where the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action, and it is the duty of the trial court to make a determination prior to submission of the case to a jury In making this determination the plaintiff must be given the benefit of every fact and all reasonable inferences arising from the evidence and all conflicts in evidence must be resolved in plaintiff's favor.

Additionally, a compulsory nonsuit is valid only in a clear case where the facts and circumstances lead to one conclusion—the absence of liability.

*Neidert v. Charlie*, 143 A.3d 384, 387-88 (Pa. Super. 2016) (citations and quotation marks omitted).

Instantly, the trial court granted nonsuit on favor of Dr. Vaughn because Adams' expert, Dr. Leitman, failed to give his professional opinion

---

[2] Here, the trial court added a footnote indicating the argument was conducted in chambers and was not recorded. We also note that Adams' counsel was offered time to respond to the written supplemental motion for nonsuit, but declined.

to the requisite degree of certainty. The trial judge explained his basis for

analysis in his Opinion and Order.

> [I]t is settled law that if the circumstances of a medical malpractice action are beyond the knowledge of a layperson, the plaintiff must present an expert to testify to a reasonable degree of medical certainty that the actions of the defendant deviated from the standard of care and that deviation caused the plaintiff's injury. **Vicari v. Spiegel**, 936 A.2d 503, 510 (Pa. Super. 2007), *aff'd* 989 A.2d 1277 (Pa. 2010). An expert is not required to testify with absolute certainty or to rule out all alternative causes of injury, **Winchel v. Jain**, 925 A.2d 782, 794 (Pa. Super. 2007), but the expert's testimony, taken in its entirety, must express reasonable certainty that the acts complained of were a substantial factor in bringing about the injury. **Hreha v. Benscoter**, 554 A.2d 527, 527 (Pa. Super. 1989). As the Pennsylvania Supreme Court has explained, "[t]he issue is not merely one of semantics." **McMahon v. Young**, 442 Pa. 484, 486, 276 A.2d 534, 535 (1971).

> > The opinion of a medical expert is evidence. If the fact-finder chooses to believe it, he can find as fact what the expert gave as an opinion. … Perhaps in the world of medicine, nothing is absolutely certain. Nevertheless, doctors must make decisions in their own profession every day based on their own expert opinions. Physicians must understand that it is the intent of our law that if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.

> *Id*.

> The term "reasonable degree of medical certainty" is not clearly defined in the case law. However, it has been noted that "an expert fails the standard of certainty if he testifies that the alleged cause 'possibly' or 'could have' led to the result, or even that it could 'very properly account' for the result, or even that it was 'very highly probable' that it caused the result." **Griffin v. Univ. of Pittsburgh Med. Ctr.-Braddock Hosp.**, 950 A.2d

996, 1000 (Pa. Super. 2008). Additionally, an expert fails to satisfy the standard of certainty where that expert's testimony is framed in terms of "more likely than not." *Id*. (*citing* **Corrado v. Thomas Jefferson Univ. Hosp.**, 790 A.2d 1022, 1031 (Pa. Super. 2001) (holding that, viewed in its totality, medical expert's testimony did not rise to the requisite level of certainty where he testified that "more likely than not in my opinion [defendant] deviated from the standard of care")).

Order and Opinion, 8/5/2016, at 4-5. We find no error of law in the trial court's use of this analytic basis.

Initially, we examine Dr. Leitman's direct and redirect testimony regarding standard of care. On direct examination, Dr. Leitman testified:

> Q: And in your opinion, Dr. Leitman, did Dr. Vaughn meet the standard of care in the performance of the surgery?
>
> A: Dr. Vaughn did not meet the standard of care in performing the surgery.
>
> Q: And on what do you base that opinion?
>
> A: It's based upon the following: That the bowel was injured. That there was no other circumstance, in my opinion, that would have caused the bowel to be injured, and that he didn't go back and check the area where the instruments were placed to make sure that the intestine was not injured prior to concluding the operation.[3]

N.T. Trial, 2/9/2016 at 119.

_____

[3] We do not quote Dr. Leitman's entire testimony herein. We note that Dr. Leitman could not point to any specific action documented in the medical records that demonstrated Dr. Vaughn's negligence. Essentially, Dr. Leitman opined Dr. Vaughn had to have misplaced at least one of the laparoscopic instruments, outside the field of view of the surgical camera, to have punctured the bowel. Further, Dr. Leitman opined that the injury could only have occurred during Dr. Vaughn's laparoscopic surgery.

On redirect, Dr. Leitman testified similarly:

Q: And you have indicated that a perforation of the bowel in a laparoscopic procedure is a very remote rare circumstance?

A: It is.

Q: And when that circumstance happens does it happen where the patient is more complex, has adhesions, infection, other problems?

A: Yes.

Q: And so, if a patient undergoes a procedure with a virgin abdomen, never having had this type of surgery before with any adhesions or any anomalies that could confuse a surgeon, if a bowel puncture is made during that surgery, is that evidence of substandard care?

A: It is.

*Id*. at 166-67.

This review of Dr. Leitman's direct and redirect testimony shows his opinion that the injury suffered by Adams could only happen through substandard (negligent) care.[4] However, that apparent confidence is belied when examining the totality of his testimony in light of the standard of certainty required in a medical negligence action.

Even prior to testifying as to his opinion, Dr. Leitman was asked the following questions on direct examination.

_____

[4] Dr. Leitman essentially provided *res ipsa loquitor* testimony. He could not opine with certainty which of the laparoscopic instruments caused the injury, only that one of them must have caused the injury and that the only way an instrument can cause the injury is by negligent placement.

Q: Following review of those items, Dr. Leitman, were you able to form opinions and conclusions within a reasonable degree of medical certainty concerning this matter?

A: Yes.

Q: And how to you define reasonable medical certainty?

A: What I define as reasonable medical certainty is based upon evidence and the records that I have reviewed that, more likely than not the opinion that I have is supported by the records and materials.

Defense Counsel: Your Honor, I would object to the witness giving a statement of what the law is with regard to a reasonable degree of medical certainty.

The Court: Your response?

Plaintiff's Counsel: My response is that when the doctor is giving his opinion in reasonable medical certainty, he should know what it means in order to formulate his answer.

The Court: Well, ladies and gentlemen, the doctor may believe what he wishes about the law; I will tell you what the law is. You must follow only my instructions on the law. So he is certainly permitted to give you his understanding about what he is doing and what he views the standard to be but, again, I will tell you what the legal standard is and that is the standard you must apply.

*Id.*, at 99-100.

Here, we note that Dr. Leitman was clearly asked what "reasonable medical certainty" meant to him, when he stated he was testifying to that standard. Dr. Leitman clearly stated he believed that his opinion, based upon evidence and the medical records, is more likely than not. This was unambiguous testimony. Adams' counsel explicitly told the trial court that

was the information she was seeking – Dr. Leitman's working definition of "reasonable medical certainty." *Id*. at 100.

The standard of "more likely true than not" was raised again during Dr. Leitman's cross-examination.

> Q: I want to talk a little bit about whether this injury could have happened at some time other than during the lap chole.[5]  In your initial report dated March 15th, on page 2.
>
> A: Can I have my reports back?  Sorry.  Page 2?
>
> Q: Page 2, about halfway down the page, under Opinion of Care Rendered.
>
> A: Yes.
>
> Q: Numbered paragraph No. 4.  I'm going to read the first part of that sentence.  And please tell me if I misstate it.  I sometimes do that when I'm trying to stand and look and read all at the same time.
>
> More likely than not the perforation to the small intestine "ileum" occurred during the operation of 2/14/12.
>
> Did I read that part of the sentence correctly?
>
> A: You did.
>
> Q: More likely than not it happened during that surgery.
>
> That would suggest to me, if I understand your use of the English language, that it's possible it happened at some time other than that surgery?

_____

[5] "Lap chole" is a shortened version of laparoscopic cholecystectomy, which is the formal name of the surgery Dr. Vaughn performed and which was at issue.

A: Possibly, but less likely.

*Id*. at 151-52.

Finally, this exchange took place on redirect and then re-cross examination:

> Q (redirect): Doctor, having reviewed the materials in this case and having issued two reports well before Dr. Leslie [Defendants' medical expert] gave his testimony, has it been your opinion from the very beginning that this bowel puncture was made during the laparoscopic surgery?
>
> A: Yes.
>
> Q: And do you hold that opinion within reasonable medical certainty?
>
> A: I do.
>
> Q: No further questions.
>
> The Court: Any recross?
>
> Q (recross): On that last point I want to make sure we are clear. You have acknowledged under oath that it is possible that that injury happened at some time other than the lap chole; right?
>
> A: Possibly, but much less likely.
>
> Q: In fact, your terminology is more likely than not?
>
> A: That's what I testified to.
>
> Q: And that's the best that you can testify to?
>
> A: It is.

*Id*. at 168-69.

Our review of the certified record demonstrates Dr. Leitman repeatedly testified that, to him, a reasonable degree of medical certainty meant that

his opinion was "more likely than not." In addition to that testimony, Dr.
Leitman also agreed that, contrary to his direct testimony, it was indeed
possible that the injury did not occur during Dr. Vaughn's laparoscopic
procedure.[6] Accordingly, Dr. Leitman contradicted his own testimony that
the injury could only have occurred through Dr. Vaughn's negligent care.

In light of the foregoing, we find that the trial court did not err in
determining Dr. Leitman's testimony was not provided to a sufficient level of
certainty. Therefore, there was no error in granting the compulsory nonsuit
in favor of Dr. Vaughn.

Finally, Adams argues the trial court erred in striking the affidavit of
Attorney Strang-Kutay that detailed her recollection of the argument held in
chambers on the motion for compulsory nonsuit regarding whether the
doctor testified to the requisite degree of certainty. The trial judge has
opined he did not need counsel's recollection of the argument. Specifically,

> While the affidavit is a reasonable representation of [Adams']
> counsel's recollection of what took place in chambers after the
> close of [Adams'] case, Defense counsel asserts that it differs in
> some respects from his recollection. (Defendants' Motion to
> Strike Affidavit, ¶ 23). It likely differs from the Court's
> recollection in some respects as well. Notwithstanding such
> differences, the fact remains that the parties present in
> chambers all recall what was said and the affidavit does not

---

[6] On cross-examination, Dr. Leitman also agreed that medical literature
admitted the possibility of injury to the small bowel during a laparoscopic
cholecystectomy, although he still claimed negligence was the only instant
possibility. N.T. Trial, 2/9/2016, at 146-47.

change what each recalls. The Court has discretion in deciding to admit or exclude and affidavit. ***See Stumpf v. Nye***, 950 A.2d 1032, 135-36 (Pa. Super. 2008). In the present case, because the affidavit does not add to the understanding of what took place and is unnecessary to more fully detail the circumstances, the Court will exclude it.

Opinion and Order, 8/5/2016, at 4.

We have reviewed the affidavit of the argument which was held in chambers and it does nothing to dissuade us from our conclusion that the trial court properly determined Dr. Leitman's testimony had failed to meet the proper standards of certainty. Other issues raised in the affidavit are irrelevant as counsel made no objections at the time of trial.[7] Therefore, we discern no abuse of discretion on the part of the trial court in striking the affidavit. Adams is not entitled to relief on this issue.

Because the trial court did not abuse its discretion or commit an error of law in either denying Adams' motion to remove nonsuit or in striking the affidavit, Adams is not entitled to relief.

Judgment affirmed.

---

[7] There is no indication in the certified record that Plaintiff's counsel requested the argument be placed on the record or that such request was denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/6/2017</u>